Filed 7/2/15  P. v. Finney CA2/4
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL M. FINNEY,<br><br>    Defendant and Appellant. | B254802<br><br>(Los Angeles County<br>Super. Ct. No. SA020932) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Noah P. Hill and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Michael M. Finney appeals from an order denying his petition for resentencing under Proposition 36, the Three Strikes Reform Act of 2012. (Pen. Code, § 1170.126.)[1] Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, who is serving three concurrent sentences of 25 years to life, has a criminal history that began at age 16, when a juvenile petition was sustained for taking a vehicle without permission. Another petition was requested the following year for grand theft auto, and another two years later for burglary.

At age 19, defendant was convicted of second degree robbery with use of a gun (§§ 211, 12022.5), and received a 7-year prison term. That same year, he was convicted of first degree burglary (§ 459), and received a 4-year term.

About five years later, while defendant was on parole, he was charged with two counts of robbery (§ 211) and one count of receiving stolen property (§ 496, subd. (a)). The receiving count was dropped, and defendant was held to answer on the two robbery counts. These were consolidated with another case involving three counts of receiving stolen property, and the robbery counts were dismissed in return for a waiver of the right to jury trial on the receiving stolen property counts. Following a bench trial, defendant was convicted on all three counts. The court denied defendant's *Romero*[2] motion to

---

[1] All further statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. *Romero* held that a trial court may strike or vacate a prior serious and/or violent felony conviction pursuant to section 1385, subdivision (a). Such rulings are reviewed for an abuse of discretion. (*Id.* at p. 504.)

In considering whether to strike or vacate a prior serious and/or violent felony conviction allegation, a court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

strike one or more prior strike convictions, and sentenced him to a third strike sentence of three concurrent terms of 25 years to life.  We affirmed his conviction in *People v. Finney* (Nov. 6, 1997, B108415 [nonpub. opn.]).

In January 2013, defendant petitioned to recall his sentence and for resentencing under Proposition 36.  The trial court found a prima facie showing of eligibility had been made, and issued an order to show cause as to why the petition should not be granted.[3]

The People raised doubts about his suitability "for resentencing due to his prior criminal history and his violent and disruptive behavior while serving his current prison sentence."  The People argued that defendant had a "dismal" disciplinary record and had been found guilty of numerous prison rule violations, many involving violence.[4]

---

[3] Resentencing under Proposition 36 is not available to an inmate if (1) the current sentence is for a serious drug offense, a felony sex offense requiring registration as a sex offender, or a felony involving a firearm, a deadly weapon, or the intent to cause great bodily injury; or (2) the inmate has been convicted of one of the felonies Proposition 36 designates as the most serious and violent offenses.  (§ 1170.126, subd. (e)(2) & (3).) The disqualifying felonies are (a) sexually violent offense; (b) oral copulation, sodomy, sexual penetration, or a lewd or lascivious act involving a child under 14 years of age; (c) any homicide offense, including any attempted homicide; (d) solicitation to commit murder; (e) assault with a machine gun on a peace officer or firefighter; (f) possession of a weapon of mass destruction; and (g) any serious or violent felony offense punishable in California by life imprisonment or death.  (§§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv).)

[4] While in prison, defendant obtained a GED, did vocational and clerical work (2001-2003), had a job in the kitchen (2007, February 2013 to present), and worked as a barber (2010).
From 1997 to 2011, defendant was found guilty of 10 prison rule violations:  (1) battery on an inmate with serious injury (Nov. 1997); (2) battery on an inmate without serious injury (Dec. 1997); (3) battery on an inmate (Dec. 1998); (4) refusal to obey a direct order (June 1998); (5) unlawful assembly (March 2001); (6) battery on a correctional officer (Nov. 2003); (7) battery on an inmate without serious injury (March 2004); (8) possession of a deadly weapon (April 2008); (9) possession of a cell phone (March 2010); and (10) obstructing a peace officer by participating in a hunger strike (Sept. 2011).  In 1996, his prison classification score was 58.  It climbed to 162 in 2005, decreased to 152 in 2007, rose to 174 the following year, and dropped to 160 in 2013.

At the suitability hearing, defendant testified that he had sought to participate in educational, self-help, and other training programs while in prison, but these programs were not readily available for a "level 4 lifer." Defendant's supporting evidence included a positive work evaluation in February 2013; an undated letter promising him employment at a Best Buy in West Hollywood (the author was currently working in Turkey); a January 2014 letter from a friend who managed a termite control business and was willing to hire him; a January 2014 letter promising him a job interview at the church where his mother was employed; his mother's December 2013 letter requesting his release; and a letter from his fiancée who was planning to hire him as caregiver for her 15-year-old disabled son.

After noting that defendant appeared to have supportive family and friends, was planning to live with his mother or fiancée, and had "at least a temporary job looking after [his fiancée's] child," the court took the matter under submission. In a detailed 18-page ruling, the court found defendant was ineligible for resentencing as a second strike offender under Proposition 36 because, due to his serious record of violence and misconduct while in prison, his resentencing would pose a substantial risk of danger to public safety. (§ 1170.126, subds. (f) & (g).)

The trial court's ruling provided numerous reasons for the denial of the petition: "Even *minor* misconduct, when it indicates that an inmate is unwilling to adhere to institutional rules or parole conditions, may constitute some evidence that he is unable or unwilling to conform to the requirements of the law and is, therefore a current danger to public safety and unsuitable for release. *In re Reed* (2009) 171 Cal.App.4th 1071, 1084–1086. [¶] In the Petitioner's case, the record indicates that the Petitioner has repeatedly committed serious misconduct while in prison, several of which involve violence."

"By far the most serious rule violation is the battery on a correctional officer, originally filed as attempted murder of a correctional officer. On November 21, 2003, two correctional officers, Burhammer and Silva, were responding to a request for assistance by other officers in conducting an unclothed body search of inmates in an exercise yard when 30 to 40 inmates attacked the two officers. As part of this melee,

4

Finney grabbed Burkhammer's baton and tried to take it from him while other inmates were physically assaulting Burkhammer on the head and chest with their feet and fists. Burkhammer felt that if Finney got a hold of the baton, Finney would have killed him. Afterwards, Finney was heard to say, 'They can't ID us, we're okay. We're gonna get away with it.'

"As it turned out, Finney was mistaken. Finney was charged with attempted murder of a peace officer. The Senior Hearing Officer found that the facts did not support the attempted murder charge, but did support a finding of guilt for acting in concert with other inmates to batter a peace officer. Due to a long delay in scheduling the hearing, however, Finney did not lose any behavioral credits. Instead, he lost 90 days use of the phones with credit for time served in Administrative Segregation.

"This incident is not the only example of an unprovoked violent attack perpetrated by Finney while in prison; there are four others. On March 5, 2004, Finney was convicted of battery on an inmate. Finney and another inmate attacked a third inmate without provocation. They punched the third inmate in the head and torso with their fists. Although ordered down, they did not comply and the officers had to use a water cannon to stop the fight. A SHU [solitary housing unit] placement was recommended for Finney.

"In 1999, Finney was convicted of battery on an inmate that occurred on December 18, 1998. Finney and one other inmate attacked a third inmate by repeatedly punching him in the head and torso area. They were all ordered down but did not comply. The officers had to use a multiple baton round from a 37 mm launcher to obtain compliance, which still resulted in negative compliance from the inmates. Finney lost 90 days of behavior credits and 90 days of privileges.

"In 1998, Finney was convicted of two separate charges of battery committed in December 1997. The first incident occurred on December 4, 1997 and resulted in Finney's conviction of battery on an inmate with serious bodily injury. Finney and another inmate attacked a third inmate from behind. The victim suffered a severe laceration to his right forearm. The laceration was so serious that at the hearing over a

5

month later, the victim was unable to personally appear and testified via telephone from the prison infirmary.

"The second incident occurred on December 25, 1997 and resulted in Finney's conviction of battery on a prisoner. Finney and three other inmates attacked another inmate with fists, hitting him in the head and upper torso area. The officers ordered the inmates on the yard down but Finney and the other inmates failed to comply. The officers utilized pepper spray as well as triple charger grenades to gain compliance.

"These also are not the only serious rules violations Finney has committed. As recently as 2011, Finney was convicted of obstructing a correctional officer by participating in a mass disturbance/hunger strike. Additionally, in 2010, Finney was convicted of possession of contraband (cellphone). He was assessed a loss of 30 days of behavioral credits and 90 days loss of phone, package, and canteen privileges. In 2008, Finney was also convicted of another serious rules violation. Correctional officers found three inmate manufactured metal stabbing weapons in the Petitioner's cell toilet. Two were six inches long and one was four inches long. All three had been sharpened to a point. The hearing officer found him guilty and assessed a forfeiture of 360 days of behavior credit.

"The fact that Finney's most recent serious rules violation occurred in 2011 does not lessen its probative value of current dangerousness. In *In re Bettencourt* (2007) 156 Cal.App.4th 780, the petitioner was serving a term of 15 to life for a 1981 murder. The Board of Prison Terms (now the Board of Parole Hearings) denied Bettencourt parole, in part due to his serious rules violations. He sought habeas relief in the Superior Court, which was eventually granted. The Warden then sought writ relief in the Court of Appeal. The Court of Appeal reversed the Superior Court's decision and ordered the petition denied. The Court of Appeal, noting that Bettencourt had 10 serious rules violations while in prison, the most recent of which was four years prior to the Board hearing, stated that 'the passage of time does not necessarily negate any parole unsuitability factor.' *Id.* at 805. Thus, this court is not required to ignore or even discount Finney's serious misconduct in prison just because the last rule violation

6

occurred three years ago. At that point he had been in prison for 16 years and yet he was still engaging in serious rule-breaking.

"While in prison, Finney has engaged continuously in serious misconduct on multiple occasions, including as recently as 2011 which shows his unwillingness to conform his conduct to institutional requirements. This is very persuasive evidence that he cannot or will not conform his conduct to the requirements of the law if released, making him unsuitable for resentencing at this time.

"Finney's rehabilitative programming is also rather weak. There is no evidence that he has attended any behavior modification programming that would help him to gain insight into the causative factors of his criminality, such as anger management and victim awareness programming. A 128G chrono by the classification committee dated November 20, 2013 reports that Finney has requested AA/NA and anger management classes, but the court notes that this request occurred over a year after the TSRA [Three Strikes Reform Act of 2012] passed and after Finney filed his petition in this court, making his motivation and sincerity somewhat suspect. Finney has also written two letters to the court asking to be resentenced; however, in neither of them does he express remorse for his actions and what he did to the victims. This failure strongly suggests that he lacks insight in to the causative factors of his crimes or how they impacted the victims.

"The Court also considered the Petitioner's proposed post-release housing and employment plans. The Petitioner stated that he had guarantees of employment and letters of support from his family to house and feed him after release. Finney has provided letters which purport to offer employment, but a close read of them makes them too indefinite to be accorded much weight. The first is from a longtime friend offering to hire him at a termite eradication company. It is not on the company's letterhead and does not specify what sort of work Finney would be doing. The other, from the Church of the Blessed Sacrament, indicates that Finney's mother attends services there. The author states that she has never met Finney but there is 'a possibility' of working with the church upon interview. Again, it is silent as to what sort of work is contemplated.

7

"The Petitioner has not adequately provided, to the satisfaction of the court, plans for employment, housing, and any further programming he will need in order to properly transition back into free society. There is no confirmation that the Petitioner will be accepted into a post-release transitional program in order to facilitate reintegration into society.

"While these factors, alone, may not justify a finding of unsuitability, the court may properly consider them, as it is relevant to a determination of whether an inmate is suitable for resentencing. *Cf.* Cal. Code Regs., tit. 15, § 2281, subd. (b).

"The Court also considered the Petitioner's post-conviction gains, including getting his GED and work experience. The court, however, finds these gains were outweighed by factors not supportive of Finney's suitability. The Petitioner's serious misconduct in prison, lack of significant rehabilitative programming, and weak re-entry plans support a finding that resentencing Finney at this time poses an unreasonable risk of danger to public safety.

"For the foregoing reasons, the Court finds that the Petitioner is NOT SUITABLE for resentencing pursuant to Penal Code § 1170.126. The Order To Show Cause is therefore DISCHARGED and the Petition is DENIED." This timely appeal followed.

**DISCUSSION**

In November 2012, the California electorate enacted Proposition 36, which amended the Three Strikes law by limiting the imposition of a 25-years-to-life sentence upon the conviction of a third felony. Under Proposition 36, "a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is *itself* a serious or violent felony. If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second-strike, rather than a third-strike, offender. [Proposition 36] also provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and,

8

under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction. According to the specific language of [Proposition 36], however, a current inmate is not entitled to resentencing if it would pose an unreasonable risk of danger to public safety." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1285–1286, fn. omitted (*Kaulick*).)

### A. Kaulick

In *Kaulick*, Division Three of this district held that before a petition for resentencing under section 1170.126 may be decided: "(1) the prosecution has the right to notice and an opportunity to be heard; (2) both the defendant and the victim have the right to be heard at any hearing on a petition for resentencing under the Act; (3) the resentencing should take place before the original sentencing judge, if available, although this is waivable; [and] (4) as to the issue of burden of proof of the issue of dangerousness, the prosecution must establish such dangerousness by a preponderance of the evidence . . . ." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1291–1292.)

The defendant in *Kaulick* argued that because the dangerousness exception in subdivision (f) of section 1170.126 would expose him to a sentence in excess of the statutorily presumed second strike sentence, he was entitled to a jury trial and to proof beyond a reasonable doubt under *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, *Blakely v. Washington* (2004) 542 U.S. 296, 303, and *Cunningham v. California* (2007) 549 U.S. 270, 281. (*Kaulick, supra*, 215 Cal.App.4th at pp. 1301–1302.) The court rejected this contention, reasoning that section 1170.126, subdivision (f) provides that the defendant "'shall be resentenced' to a second strike sentence 'unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to

9

which he or she was originally sentenced." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302–1303, fn. omitted.)

*Kaulick* explains that the "retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt. [¶] Instead, we conclude the proper standard of proof is preponderance of the evidence. Evidence Code section 115 provides that, '[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.' There is no statute or case authority providing for a greater burden, and [defendant] has not persuaded us that any greater burden is necessary. In contrast, it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. (*In re Coley* (2012) 55 Cal.4th 524, 557.) As dangerousness is such a factor, preponderance of the evidence is the appropriate standard." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1304–1305, fns. omitted.)

Defendant contends that *Kaulick* was wrongly decided, and that he is entitled to a jury trial on the issue of dangerousness, which must be established beyond a reasonable doubt because it is an aggravating factor that increases the legally prescribed second-strike sentence that, as one who meets the eligibility requirements of section 1170.126, subdivision (f), he must receive. We are not persuaded. We agree with *Kaulick's* analysis and similarly conclude that the proper standard of proof is preponderance of the evidence, and that no jury trial on the issue of dangerousness is required.

10

*B.*     *The Trial Court Did Not Abuse Its Discretion*

Defendant contends the trial court abused its discretion in finding that his resentencing as a second strike offender would create an unreasonable risk of danger to public safety and that his parole plans are inadequate.  We find no abuse of discretion.[5]

The factors to be considered in determining whether resentencing the petitioner would create an unreasonable risk of danger to public safety include:  "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (g).)

As previously discussed, the trial court provided a detailed explanation of its determination that resentencing defendant as a second strike offender would create an unreasonable risk of danger to public safety.  Under the deferential abuse of discretion standard of review, that ruling will be upheld on appeal unless it "'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]."  (*People v. Williams*, *supra,* 17 Cal.4th at p. 162.)  We find no abuse of discretion in this case.

Given the length of time already served by defendant, the granting of his petition for resentencing would render him eligible for immediate release.  Defendant argues the denial of his petition is akin to the denial of parole, which would be reviewed under the "some evidence" standard of review.  In the parole suitability context, "a court must consider whether '*some evidence in the record before the Board supports the decision to deny parole*, based upon the factors specified by statute and regulation."  (*In re Lawrence* (2008) 44 Cal.4th 1181, 1210.)  Under the deferential "some evidence" standard of

---

[5] Whether the abuse of discretion standard of review applies to resentencing petition orders is an issue now pending before the Supreme Court in *People v. Aparicio* (2015) 232 Cal.App.4th 1065, review granted Mar. 25, 2015, S224317, briefing deferred pursuant to rule 8.520, Cal. Rules of Court.

11

review, the court may not substitute its judgment for that of the parole board, and the standard of review "'simply ensures that parole decisions are supported by a modicum of evidence and are not arbitrary and capricious.' [Citation.]" (*In re Bettencourt*, *supra*, 156 Cal.App.4th at p. 798.) Given the numerous findings of misconduct in defendant's prison file, many of which involved violence and included a finding of battery against a prison guard, we conclude the trial court's ruling is supported by more than some evidence.

Defendant's assertion that he falls outside the "spirit" of the Three Strikes law is not compelling. The trial court denied defendant's *Romero* motion, thus finding him within the spirit of that law.

C.      *Propositions 36 and 47*

Proposition 47, the Safe Neighborhoods and Schools Act, was enacted while this appeal was pending. Under Proposition 47, certain drug- and theft-related offenses were designated as misdemeanors; previously the same offenses were punishable as felonies or misdemeanors depending on the underlying facts. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091 [*Rivera*].) Proposition 47 allows an inmate to petition for resentencing if he or she is currently serving a felony sentence for a crime Proposition 47 now designates as a misdemeanor. (§1170.18, subd. (a); *Rivera*, at p. 1092.)

If the petitioner meets the criteria for resentencing, his or her "felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b); see *Rivera*, at p. 1092.) The standard used in Proposition 36 for determining whether a person should be resentenced is also used in Proposition 47. The identical three factors are to be considered in making the determination under both statutes. (Compare § 1170.18, subd. (b) with § 1170.126, subd. (g).)

Section 1170.18, subdivision (c) states, "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of

12

subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c), italics added.)  The phrase, a "new violent felony," refers to the same felonies that disqualify an inmate from resentencing under Proposition 36.  (Compare § 1170.18, subd. (c) with § 1170.126, subd. (e)(3).)

Defendant contends that Proposition 47's definition of the phrase, "unreasonable risk of danger to public safety," applies retroactively to resentencing petitions under Proposition 36.  That issue also is pending before the Supreme Court.  (*People v. Chaney* (2015) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676; *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.).

We conclude that section 1170.18 subdivision (c)'s definition does not apply to petitions for resentencing under Proposition 36.  Other courts have reached the same decision, and the issue is pending before the Supreme Court.  (*People v. Guzman* (2015) 235 Cal.App.4th 711, review granted June 17, 2015, S226410, briefing deferred pursuant to rule 8.520 Cal. Rules of Court; *People v. Davis* (2015) 234 Cal.App.4th 1001, review granted June 10, 2015, S225603, briefing deferred pursuant to rule 8.520 Cal. Rules of Court.)

The Sixth District recently held that section 1170.18 subdivision (c)'s definition contains an obvious drafting error.  (*People v. Lopez* (2015) 236 Cal.App.4th 518 (*Lopez*).)  The court examined the statutory definition and concluded "that the word 'Code' was 'erroneously used' in section 1170.18, subdivision (c) rather than the word 'Act,' to refer to the SNS [Safe Neighborhoods and Schools] Act, and therefore this error is properly subjected to 'judicial correction.'  The 'purpose' of section 1170.18 and 'the intent of the electorate' in enacting it unambiguously demonstrate that the voters did not intend to alter the Reform Act or section 1170.126 in any way or to require the resentencing of any person serving a sentence for a crime other than one of the specified nonserious, nonviolent property or drug crimes." (*Id.* at p. 527.)

*Lopez* identified three grounds in support of its determination.

"First, because Proposition 47's ballot materials and proposed statutory language contained nothing whatsoever to suggest that Proposition 47 would have any impact on

13

the resentencing of anyone who was serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes, it is inconceivable that voters intended for subdivision (c) of section 1170.18 to severely restrict the ability of a court to reject a resentencing petition under the Reform Act by a person convicted of crimes *other* than one of the specified property or drug crimes and whom the court considered dangerous. The Proposition 47 ballot materials contained no mention of such a possible consequence and the only hint was the use of the word 'Code' rather than 'Act' in an obscure subdivision of the lengthy proposed act. The ballot materials repeatedly emphasized that the resentencing provisions of Proposition 47, which were contained in section 1170.18, were *limited* to *only* those persons serving sentences for the specified nonserious, nonviolent property or drug crimes.

"Second, the timing of Proposition 47 makes an intent to alter the Reform Act illogical. The Reform Act required petitions to be brought within two years unless a court concluded that there was good cause for a late-filed petition. (§ 1170.126, subd. (b).) By the time Proposition 47 took effect, only two days remained in the two-year period for filing a Reform Act petition. No rational voter could have intended to change the rules for Reform Act petitions at the last moment, when nearly all petitions would already have been filed and most of them adjudicated.

"Third, the structure and content of section 1170.18 is inconsistent with an intent to apply section 1170.18, subdivision (c)'s definition throughout the entire Penal Code. Subdivision (n) of section 1170.18 provides: 'Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling *within the purview of this act*.' (§ 1170.18, subd. (n), italics added.) Applying section 1170.18, subdivision (c)'s definition throughout the Penal Code would necessarily 'diminish or abrogate the finality of judgments' in cases, like those subject to the Reform Act, that do not fall 'within the purview of' Proposition 47. Defendant's petition under the Reform Act, like most such petitions, seeks to abrogate the finality of a Three Strikes judgment in a case that does not involve one of the specified nonserious, nonviolent property or drug crimes. Thus, under section 1170.18, subdivision (n), '[n]othing' in section 1170.18 was

14

intended to apply to his petition. In addition, the wording of section 1170.18, subdivision (c) is itself inconsistent with an intent to apply it 'throughout' the entire Penal Code. It refers to 'petitioners' and defines a phrase that appears in only two sections of the Penal Code, section 1170.18 and section 1170.126. If the voters had intended to apply this definition to Reform Act petitions, this phrasing would have been the most roundabout means of doing so. Since the ballot materials made no mention of the Reform Act, we will not ascribe such unreasonable conduct to the voters." (*People v. Lopez, supra*, 236 Cal.App.4th at pp. 527–528.)

We agree with this analysis and similarly conclude that Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" does not apply retroactively to resentencing under Proposition 36. We therefore reject the contention that Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" applies to this case.

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.


15